

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHERYL CORPANY, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-878-A |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.  STATEMENT OF THE CASE

Plaintiff Cheryl Corpany ("Corpany") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claim for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").  Corpany filed her

application on September 29, 2010 with a protective filing date of April 26, 2010.  (Transcript

("Tr.") 15; *see* Tr. 115-17.)  After her application for benefits was denied initially and on

reconsideration, Corpany requested a hearing before an administrative law judge ("ALJ").  (Tr.

15, 56-68.)  The ALJ held a hearing on September 20, 2011 and issued a decision on November

14, 2011 denying Corpany's application for benefits.  (Tr. 15-23, 30-49.)  On November 16,

2012, the Appeals Council denied Corpany's request for review, leaving the ALJ's November 14, 2011 decision as the final decision of the Commissioner in Corpany's case. (Tr. 1-4.) Corpany subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show

2

he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In her brief, Corpany presents the following issues:

(1) Whether the ALJ erred in failing to consider Corpany's somatoform disorder[1] a severe impairment when making his: (a) findings at Step Three, (b) credibility determination, and (c) residual functional capacity ("RFC") determination (Plaintiff's Brief ("Pl.'s Br.") at 1, 9-17); and

(2) Whether the ALJ erred in failing to include limitations in the RFC determination relating to Corpany's hand impairments and involuntary jerking (Pl.'s Br. at 1, 17-19).

---

[1] Somatoform disorders are defined as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07.

## IV.   ALJ DECISION

In his November 14, 2011 decision, the ALJ found that Corpany had not engaged in any substantial gainful activity since July 29, 2010, her alleged onset date of disability.  (Tr. 16, 22.) At Step Two,[2] in the "Rationale" section of his decision, the ALJ stated:

> The second step of the process inquires whether the claimant has a severe impairment . . . .  The claimant alleges disability due to carpal tunnel syndrome, degenerative disc disease of the lumbar spine, neck pain, depression and anxiety. Since the evidence establishes that one or more of these impairments would have more than a slight effect on her ability to work, it will be concluded that the claimant's impairments are severe.

(Tr. 16.)  Later, in the "Findings" section, the ALJ stated, "The medical evidence establishes that the claimant has severe pain of unknown origin, as well as possible depression . . . ."  (Tr. 22.) At Step Three, the ALJ, after specifically considering sections 1.04, 12.04, and 12.06 of the Listing, found that Corpany did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing.  (Tr. 16, 22.)  As to Corpany's RFC, the ALJ stated the following:

> I have concluded that the claimant has retained the functional capacity for sedentary level work limited by the need to sit or stand, at her option, while in the performance of job duties, and further limited by the need to work with things rather than people, and the need for non-complex job skills.

(Tr. 20; *see* Tr. 22.)

---

[2] To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *cf. id.* § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985).  Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.

Based upon this RFC assessment, the ALJ found that Corpany could not return to her past relevant work. (Tr. 21.)  However, based upon the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Corpany could perform.  (Tr. 21-23.)  Consequently, the ALJ found that Corpany was not disabled.  (*Id.*)

## V.   DISCUSSION

### A.   Somatoform Disorder

Corpany argues the ALJ erred in failing to consider Corpany's somatoform disorder a severe impairment when making his: (a) findings at Step Three, (b) credibility determination, and (c) RFC determination.  (Pl.'s Br. at 1, 9-17; Plaintiffs' Reply ("Pl.'s Reply") at 1-8.)

#### 1.   Step Three Findings Related to Somatoform Disorder

As to the ALJ's findings at Step Three, Corpany claims that the "ALJ's failure to consider section 12.07 was highly prejudicial to Corpany's case because the record supports a finding that she met or medically equaled the Listing." (Pl.'s Br. at 12.)  Corpany claims that the evidence in the record shows that she had met or medically equaled section 12.07 and the ALJ erred in not even considering whether she met such section. (Pl.'s Br. at 12-13.)

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing.  20 C.F.R. § 404.1520(d).  As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled at Step Three.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996).  Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue

5

ultimately reserved to the Commissioner.  SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1526(c) (stating that opinions that medical consultants designated by the Commissioner offer on the issue of whether an impairment meets or equals the requirements for a listed impairment will be considered); 20 C.F.R. § 404.1527(d).  Medical equivalence must be based on medical findings that are supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1526.

In this case, the ALJ found at Step Three that Corpany's impairments did not meet or equal the required criteria for any of the impairments set forth in the Listing, including those in sections 1.04, 12.04, and 12.06.  (Tr. 16.)  In making this finding, the ALJ summarily stated that a "review of the objective medical evidence fails to show that any of the claimant's medically determinable impairments, either singularly or in combination, meet or equal in severity any of those impairments contained within the Listing of Impairments."  (Tr. 16.)  The ALJ, however, failed to identify the specific evidence on which he relied for this conclusion at Step Three.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).  However, even assuming the ALJ erred at Step Three by failing to provide reasons for her adverse findings, remand would be necessary only if the claimant's substantial rights have been affected. *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected.").  To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the

6

existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

To meet the Listing under Section 12.07, which deals with somatoform disorders, Corpany must show, as relevant here, that the requirements in both Parts A and B, listed below, are satisfied:

> A. Medically documented by evidence of one of the following:
>    1. . . . .
>    2. Persistent nonorganic disturbance of one of the following:
>       a. Vision; or
>       b. Speech; or
>       c. Hearing; or
>       d. Use of a limb; or
>       e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or
>       f. Sensation (e.g., diminished or heightened).
>    3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;
> AND
> B. Resulting in at least two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.07.

With respect to section 12.07, even assuming that Part A had been met, substantial evidence supports the ALJ's implicit determination at Step Three that none of the subsections of Part B had been met. Although the ALJ did not provide a discussion of section 12.07, he did provide a discussion of criteria for the applicable mental impairment evaluation pursuant to the special technique set forth in 20 C.F.R. § 404.1520a. This discussion mirrors the criteria found in Part B of section 12.07 of the Listing. The ALJ found in his evaluation of Corpany's mental

impairments that such impairments resulted in (1) mild restrictions of activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate restrictions in ability to concentrate and maintain persistence or pace; and (4) no episodes of prolonged deterioration or decompensation. (Tr. 21.)  In making such a determination, the ALJ relied, *inter alia*, on a Psychiatric Review Technique ("PRT") dated January 7, 2011 in which State Agency Medical Consultant ("SAMC") Matthew Turner, Ph.D. ("SAMC Turner") considered whether Corpany met, *inter alia*, section 12.07 of the Listing and opined that Corpany (a) was mildly restricted in her activities of daily living, (b) had mild difficulties in maintaining social functioning, (c) had moderate difficulties in maintaining concentration, persistence, or pace, and (d) had no episodes of decompensation. (Tr. 19, 390-402; *see also* Tr. 404-07.)[3]

Corpany argues that, to find that Corpany met Part B of section 12.07, the ALJ should have relied on the opinions of Corpany's therapist, Holly Webb, LPC ("Ms. Webb"),[4] who opined, *inter alia*, that Corpany had the complete loss of ability to perform eleven activities related to (a) understanding and carrying out instructions, (b) sustained concentration and persistence, (c) responding appropriately to supervision, co-workers and usual work situations, (d) adapting to changes in a routine work setting, and (e) personal and social adjustment. (Pl.'s Br. at 12; *see* Pl.'s Reply at 2; Tr. 346, 720-23.)  Ms. Webb also claims that Corpany "had had a significant decline in being able to meet activities of daily living." (Tr. 346.)  In this case, however, the ALJ clearly considered and analyzed Ms. Webb's opinions. (Tr. 17-18.)  In

---

[3] SAMCs are considered experts in the Social Security disability program and their opinions may be entitled to great weight if they are supported by the evidence. *See* 20 C.F.R. § 404.1527(e); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996).

[4] The Court notes that an LPC is not listed as acceptable medical sources who can provide evidence to establish an impairment and whose opinion is entitled to controlled weight. 20 C.F.R. § 404.1513(a). The ALJ, however, may consider evidence from an LPC to assess the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d)(1).

addition, the ALJ explained that he was giving Ms. Webb's opinions "little probative weight" because, in essence, there was nothing in Ms. Webb's treatment notes that reasonably supported Webb's opinions. (Tr. 18.)

In addition, Corpany claims that the December 28, 2010 opinion of Kelly Goodness, Ph.D. ("Dr. Goodness") that Corpany's "[i]mmediate memory appeared poor" also indicates that she met Part B of section 12.07. (Pl.'s Br. at 12; Pl.'s Reply at 2; Tr. 386; see Tr. 384-89.) However, while Dr. Goodness did make this statement, she also stated that Corpany's delayed and remote memory appeared intact and that her attention and concentration appeared adequate. (Tr. 386.) An opinion that Corpany's attention and concentration is "adequate" is obviously very different from an opinion that Goodness suffered from a marked difficulty in maintaining concentration, persistence, or pace, as required to show that Corpany met one prong of Part B of section 12.07 of the Listing.

Because there is substantial evidence supporting the ALJ's decision at Step Three, any legal error from the ALJ's failure to mention section 12.07 or identify the specific evidence he relied on in reaching this conclusion was, at most, harmless. An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted).

### 2. Credibility of Claimant Related to Somatoform Disorder

Corpany also claims that the ALJ erred in failing to consider her somatization disorder when making his credibility findings. (Pl.'s Br. at 13-16; Pl.'s Reply at 3-4.) Corpany argues that "[w]hen medical findings do not substantiate the existence of physical symptoms capable of

producing alleged pain and other symptoms, the ALJ must investigate the possibility that a mental impairment is the basis of the symptoms." (Pl.'s Br. at 13 (citing to *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994)). Citing to *Scott v. Shalala*, 43 F.3d 669, 1994 WL 725034, at *4 (5th Cir. Dec. 19, 1994), Corpany claims that an "ALJ is . . . required to investigate the possibility that a claimant's 'complaints of pain and severe discomfort' are the result of a somatoform disorder, rather than his physical impairments, where there is evidence of a somatoform disorder in the claimant's medical records.'" (Pl.'s Br. at 13.) Corpany further asserts that "the fact that the objective medical evidence does not confirm the physical symptoms does more to suggest that there is a somatoform disorder than it does to suggest that Plaintiff is not credible or that she is feigning or malingering." (Pl.'s Br. at 15.) Corpany argues that the record supports the existence of a somatoform disorder and, thus, the ALJ should have considered the effect of such disorder when making Corpany's credibility determination. (Pl.'s Br. at 15.)

In evaluating Corpany's credibility, the ALJ stated, *inter alia*, the following:

> This case hinges on the claimant's credibility, since virtually all diagnostic tests have been negative for any medically determinable abnormalities that would reasonably account for the claimant's subjective allegations. I do not find the claimant's subjective complaints credible. Indeed, at the hearing the claimant rather indicated a strong reason for a desire to stay home: to care for her disabled children.
>
> . . . .
>
> [] The claimant's testimony concerning her functional limitations was not reasonably supported by the objective clinical findings.

(Tr. 20, 22.)

An ALJ is not required to give subjective evidence precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988). Rather, the ALJ's evaluation of the

credibility of an individual's complaints of pain is used to resolve conflicts between the subjective evidence and the medical evidence. *Id.* In this case, the record shows that the ALJ was aware that Corpany had many symptoms that could not be attributed to any particular syndrome and that there might be a psychological component to her symptoms. (Tr. 16-22.) In addition, the ALJ discussed the fact that one psychiatrist had indicated that Corpany might be suffering from somatoform, which needed to be ruled out. (Tr. 20; *see* Tr. 702). Based on all the evidence, the ALJ determined that Corpany had, *inter alia*, the severe impairment of severe pain of an unknown origin as well as possible depression, which, arguably, takes into count the symptoms of Corpany's alleged somatoform disorder. (Tr. 22.) The record is also clear that the ALJ in this case, unlike in *Latham*,[5] considered Corpany's mental impairment and findings from medical examinations as well as Corpany's own reports of her daily activities in determining that her subjective complaints were not credible to the extent that she claimed. Thus, the ALJ clearly indicated the credibility choices he made and the basis he used for making those choices. *See Hollis*, 837 F.2d at 1385; *see also* 20 C.F.R. § 404.1529 (ALJ will consider the extent to which claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence); SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996) (discussing factors used in credibility determination).

Furthermore, there is substantial evidence in the record to support the ALJ's choice to credit the medical records over Corpany's subjective testimony, including the following: (1) evidence that some of Corpany's jerking symptoms were, at least temporarily, controlled with

---

[5] In *Latham*, the Court found that, when the claimant had been diagnosed with a possible somatization disorder, the ALJ could not dismiss the claimant's complaints of pain and severe discomfort when he decided the claimant's physical ailments were not serious. *Latham*, 36 F.3d at 484. Instead, the ALJ should investigate the possibility that the claimant's pain and symptoms existed as a result of the disorder. *Id.*

11

medication[6] (Tr. 17; *see* Tr. 528); (2) evidence that Corpany's pain in her left arm improved after having surgery (Tr. 17; *see* Tr. 321-22); (3) Corpany's reports to one doctor that she drove herself to the doctor's office, spent her days caring for herself and her children, and could perform most of the normal household chores unless they involved heavy lifting or physical ability (Tr. 18; *see* Tr. 385); (4) notation by David Cobbs, Ph.D. ("Dr. Cobbs") during a September 6, 2011 neuropsychological evaluation that Corpany's performance on a grip strength measure was exceptionally poor due to either inadequate effort or prominent motor weakness (Tr. 20; *see* Tr. 732); (5) evidence that Corpany drives a car, shops, pays bills, goes outside daily, and has the ability to attend physical therapy two times a week (Tr. 20; *see* Tr. 382); (6) SAMC Turner's January 7, 2011 PRT (Tr. 19, 390-402); and (7) a Physical Residual Functional Capacity Assessment in the record dated December 11, 2010 in which SAMC James Wright, M.D. ("SAMC Wright"), opined that Corpany could perform, in essence, medium level work (Tr. 20; *see* Tr. 375-82).  Based on Corpany's daily activities and the medical evidence in the record, the ALJ chose to discredit Corpany's subjective complaints regarding complaints of pain and discomfort.  An ALJ may discredit subjective complaints in light of contradictory medical reports or daily activities.  *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).  Thus, the ALJ's determination that Corpany's daily activities discredited her allegations of disabling impairments is supported by substantial evidence.  *See, e.g., Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (noting that the claimant engaged in a variety of activities, including bathing herself, preparing food, and operating a vehicle).

---

[6] It is well-settled that conditions controlled by medication or therapy cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

### 3.  RFC Determination Related to Somatoform Disorder

Corpany also argues that the ALJ erred in failing to properly consider her somatization disorder when formulating her RFC. (Pl.'s Br. at 16; Pl.'s Reply at 4-7.)  Specifically, Corpany claims:

> In this case the ALJ failed to properly consider all relevant evidence in formulating the RFC determination because he did not adequately consider Corpany's somatoform disorder.  For example, the ALJ included no manipulative or upper extremity limitations related to Corpany's jerking and hand impairments in the RFC, despite the fact that her treating and examining specialists have consistently noted the presence of these conditions and related them to a somatic or psychogenic disorder. . . .
>
> . . . . Had Corpany's somatization disorder been properly considered, substantial evidence would support a finding that she is unable to perform and sustain work at any exertional level.

(Pl.'s Br. at 16-17.)

RFC is what an individual can still do despite her limitations.[7]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[8] factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at *3–6.  The responsibility for determining a

---

[7] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[8] Exertional capacity addresses an individual's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. § 404.1529; SSR 96-7p, WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

A review of the ALJ's opinion in this case reveals that the ALJ gave thorough consideration to the evidence in its entirety, including Corpany's allegations of pain and the symptoms associated with her alleged somatoform disorder. The ALJ acknowledged that Corpany had seen various doctors of various specialties with no firm diagnosis. (Tr. 17.) In

14

addition, the ALJ placed significant limitations on Corpany to account for her severe impairments, limiting her to sedentary work with a sit/stand option, the need to work with things rather than people, and the need for non-complex job duties. (Tr. 22.)

Based on the facts in this case, it is clear that the ALJ discussed (1) the evidence in the record in making his RFC determination, (2) adequately explained the reasoning for such determination and for giving less weight to certain evidence, and (3) exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

**B.     Failure to Incorporate RFC Limitations Relating to Corpany's Upper Extremity and Manipulative Limitations Separate and Apart from Somatoform Disorder**

Corpany also claims that the ALJ erred in failing to include any limitations into the RFC determination "related to her hand impairments or involuntary jerking or ataxia." (Pl.'s Brief at 17; *see* Pl.'s Reply at 4-7.) Corpany argues that the ALJ wrongly rejected Corpany's impaired grip strength when he found that "the claimant has undergone testing of the upper extremities, including EMG/nerve conduction study, and she does not have an impairment that would cause such extreme loss of grip." (Pl.'s Br. at 17-18.) In addition, Corpany claims that the ALJ erred in not discussing why he rejected her limitations related to the involuntary jerking as the record shows that numerous medical providers have indicated that Corpany suffers from involuntary jerking, ataxia, and disturbance of coordination. (Pl.'s Br. at 18.)

In this case, as set forth above, the ALJ found in the RFC determination that Corpany had the RFC to perform sedentary work except she must have a sit/stand option, needed to work with

things rather than people and in jobs that had non-complex job duties. (Tr. 22.) In making such a determination, the ALJ acknowledged that Corpany had reported involuntary jerking, loss of coordination, pain in her arms and shoulders, and loss of grip strength. (Tr. 16-20.) In addition, the ALJ noted that there was a Physical Residual Functional Capacity Assessment in the record dated December 11, 2010 in which State Agency Medical Consultant ("SAMC") James Wright, M.D. ("SAMC Wright") opined that Corpany could perform, in essence, medium level work. (Tr. 20; *see* Tr. 375-82). While the ALJ determined that this level of work "seems like a bit much for a woman who weighs a little less than one hundred pounds," the ALJ also noted the various indications in the record when Corpany's upper extremity and manipulative limitations seemed to be either exaggerated, had improved either as a result of medication or surgery, or were not consistent with Corpany's daily activities. (Tr. 17-20.)

In this case it is clear that the ALJ was aware of and specifically discussed Corpany's upper extremity and manipulative limitations but did not find that the substantial evidence in the record supported including any specific limitations in the RFC determination for such impairment. Based upon other evidence in the record, the ALJ found, however, that Corpany was capable, *inter alia*, of performing sedentary work with additional limitations. Substantial evidence supports the ALJ's decision in this regard. The ALJ is not required to include limitations in the RFC determination that are not supported by the evidence in the record. As stated above, an ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 7, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 21, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

18